# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOSHUA HENDERSON, *individually and on behalf of all others similarly situated,*<br><br>       Plaintiff,<br><br>v.<br><br>AHOLD DELHAIZE USA SERVICES, LLC, FOOD LION, LLC, and GIANT FOOD, LLC,<br><br>       Defendants. | **Case No. 1:25-cv-00531**<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONSOLIDATE, APPOINT INTERIM LEAD COUNSEL, AND SET BRIEFING SCHEDULE** |
| JON ANKUS, *individually and on behalf of all others similarly situated,*<br><br>       Plaintiff,<br><br>v.<br><br>AHOLD DELHAIZE USA SERVICES, LLC,<br><br>       Defendant. | **Case No. 1:25-cv-00533** |

Plaintiffs Joshua Henderson and Jon Ankus (collectively "Plaintiffs") are the Plaintiffs in the above-captioned actions that relate to the same alleged data breach. They respectfully move this Court for an order (1) consolidating *Henderson v. Ahold Delhaize USA Services, LLC, Food Lion, LLC and Giant Food, LLC*, 1:25-cv-00531 (filed June 27, 2025), and *Ankus v. Ahold Delhaize USA Services, LLC*, 1:25-cv-00533 (filed June 27, 2025) (collectively the "Related Actions"), pursuant to Fed. R. Civ. P. 42(a), as well as any future related actions that may be filed in this Court, under the docket of the first-filed *Henderson* action (No. 1:25-cv-00531) and under the new

Case 1:25-cv-00531-TDS-LPA    Document 6    Filed 06/30/25    Page 1 of 22

caption "*In re Ahold Delhaize Data Breach Litigation*"; (2) appointing Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC, Jeff Ostrow of Kopelowitz Ostrow, P.A., and David Wilkerson of Wilkerson Justus, PLLC as interim co-lead counsel (collectively, "Proposed Interim Class Counsel"), and Jean S. Martin of Morgan & Morgan, P.A. as interim local counsel ("Proposed Interim Local Counsel"), pursuant to Fed. R. Civ. P. 23(g); and setting a schedule of 30 days for Plaintiffs to file a single consolidated amended complaint ("CAC"), 60 days for Defendants to respond thereto, and in the event Defendants file a dispositive motion in response to the CAC, giving Plaintiffs 30 days to file an opposition, and Defendants 21 days to file a reply,

Consolidation of the Related Action is appropriate because they arise from the same nucleus of operative factual allegations—a data breach that is believed to involve the personally-identifiable information ("PII") and protected health information ("PHI", and collectively with "PII", "Private Information") of more than 2.2 million individuals'—and assert similar and overlapping causes of action on behalf of similar and overlapping classes, seeking the same relief.

Appointing Proposed Interim Class Counsel and Interim Local Counsel here is appropriate because, as described below, another duplicative action has been filed in this Court, and it is likely additional cases may be filed. Appointment of Proposed Interim Class Counsel and Local Counsel will clarify the roles and responsibilities of counsel on behalf of the class, while avoiding duplicative and unnecessary litigation that could result in inefficiencies for the Court and the Parties. Appointment of Proposed Interim Class Counsel will allow for more efficient and direct communication in this case. Proposed Interim Class Counsel will also allow the parties to move the case forward in an efficient manner.[1]

## I.    BACKGROUND

---

[1] Plaintiffs' counsel have not conferred with Defendant's counsel on this Motion because Defendant's counsel has yet to make an appearance in any of the Related Actions.

Defendant Ahold Delhaize USA Services, LLC ("Ahold") is the largest grocery retail group on the east coast and the fourth largest in the United States. Defendant Ahold owns regional supermarket chains including Defendant Food Lion, LLC ("Food Lion") and Giant Food, LLC ("Giant Food") (collectively "Defendants")

Plaintiff's and Class Members are current and former employees of Defendants. Defendants had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on its affirmative representations to Plaintiff and Class Members, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

On November 6, 2024, Defendant Ahold detected a cybersecurity issue involving unauthorized access to some of its internal U.S. business systems. In response, Defendant Ahold launched an investigation to determine the nature and scope of the Data Breach. Defendant Ahold's investigation determined that an unauthorized third party obtained certain files from one of its internal U.S. file repositories between November 5 and 6, 2024. Based on a review of the impacted files, Defendant Ahold determined that some of the files may have included internal employment records containing personal information obtained in the course of providing services for certain current and former subsidiaries of Defendant Ahold, including Defendants Food Lion and Giant Food.

Upon information and belief, the following types of Personally Identifiable Information ("PII") and Protected Health Information ("PHI", and collectively with "PII", "Private Information") may have been impacted in the Data Breach: name, contact information (for example, postal and email address and telephone number), date of birth, government-issued identification numbers (for example, Social Security, passport and driver's license numbers), financial account information (for example, bank account number), health information (for

example, workers' compensation information and medical information contained in employment records), and employment-related information.

On June 26, 2025, Defendant Ahold issued a notice of public disclosure about the Data Breach and began sending notice letters to individuals impacted.

To date, there have been two putative class actions filed related to the Data Breach. Counsel in these Related Actions acted promptly to coordinate their efforts and to move the cases forward efficiently. Counsel now seek to consolidate these actions and move for the appointment of Proposed Interim Class Counsel and Interim Local Counsel to streamline the efficient prosecution of this litigation.

## II.    ARGUMENT

### A.    The Related Actions Should be Consolidated Under Rule 42(a)

Federal Rule of Civil Procedure 42(a) provides that "if actions before the court involve a common question of law or fact, the court may consolidate the actions." Fed. R. Civ. P. 42(a); *Sellers v. Southeastern Comty. and Family Services, Inc.*, Nos. 1:14-cv-422, 1:14-cv-1032, 2015 WL 1789042 at *1 (M.D.N.C. Apr. 20, 2015). If the motion to consolidate "meet[s] the threshold requirement of involving a common question of law or fact, whether to grant the motion becomes an issue of judicial discretion." *Id.* (citing *Pariseau v. Anodyne Healthcare Mgmt., Inc.*, No. Civ. A. 3:04-cv-630, 2006 WL 325379, at *1 (W.D.N.C. Feb. 9, 2006). In exercising its "broad discretion" to determine whether consolidation is appropriate,

> [T]he court should weigh the risk of prejudice and possible confusion versus the possibility of inconsistent adjudication of common factual and legal issues, the burden on the parties, witnesses, and judicial resources by multiple lawsuits, the length of time required to try multiple suits versus a single suit, and the relative expense required for multiple suits versus a single suit.

*In re Cree, Inc., Secs. Litig.*, 219 F.R.D. 369, 371 (M.D.N.C. 2003) (citing *Arnold v. E. Air Lines*, 681 F.2d 186, 193 (4th Cir. 1982). Where, as here, the actions involve "common parties, overlapping legal issues, and related factual scenarios, and the consolidation itself [will] not cause unfair prejudice," this Court has found that "[c]onsolidation is appropriate." *Roanoke River Basin Ass'n v. Duke Energy Progress, LLC*, Nos. 1:16-cv-607, 1:17-cv-452, 2018 WL 11449626, at *3 (M.D.N.C. May 8, 2018) (granting consolidation where the cases involved "common questions of law and fact", and consolidation would "promote judicial economy, prevent inconsistent adjudications of common questions of law and fact, and [would] likely prove to be less burdensome for the Court, litigants, and witnesses."); *Fenix Flashlights, LLC v. Jian Li*, Nos. 1:12-cv-1310, 1:15-cv-140, 2015 WL 5774252, at *3 (M.D.N.C. Sep. 30, 2015) (granting consolidation "given the essentially identical nature of the two matters, the lack of any demonstrated prejudice of consolidation, and the inefficiency of considering the same arguments twice….").

### 1. Common Questions of Law and Fact Predominate

Consolidation is appropriate here because the Related Actions are substantively identical and are in the same stage of litigation. Each action: (i) is brought as a putative class action seeking to certify the same class of individuals; (ii) alleges overlapping claims; and (iii) arises out of the same Data Breach that inflicted the same alleged injuries, namely, exposure of Plaintiffs' and the Class's Private Information. The identical factual predicate of each of the Related Actions, coupled with the identical questions of law in both actions provides two independent bases for consolidation.

Consolidation of the Related Actions is warranted because it will simplify discovery, pretrial motions, class certification issues, and other case management issues, especially because the Related Actions are at their procedural inception. Consolidating the Related Actions will also

reduce the confusion and delay that may result from prosecuting related putative class actions separately, including eliminating duplicative discovery and the possibility of inconsistent rulings on class certification, *Daubert* motions, and other pretrial matters. Furthermore, consolidation will foster judicial economy and will not prejudice any party.

Courts consistently find that data privacy cases are particularly appropriate for Rule 42 consolidation. *See, e.g., Bedont v. Horizon Actuarial Services, LLC*, No. 1:22-CV-01565-ELR, 2022 WL 3702117, at *2 (N.D. Ga, Atlanta May 12, 2022) (Slip Copy) ("All of the Cases stem from the same data breach and will thus involve similar factual issues."); *McDonald v. PaperlessPay Corp.*, No. 3:20-CV-1005-MMH-MCR, 2021 WL 931599, at *3 (M.D. Fla. Mar. 11, 2021) (court ordered consolidation of data breach cases because even though there were "slight distinctions in proposed class definitions and specific causes of action" the cases concerned the same data breach, which resulted in generally the same type of harm, to the same broad category of putative class members); *Dreger v. Progressive Leasing LLC*, No. 2:23-cv-00783-DBB-CMR, 2024 WL 115854 (D. Utah, Jan. 10, 2024) (same).

### 2. The Cases Face the Risk of Inconsistent Adjudications

There is a substantial threat of inconsistent adjudications of common factual and legal issues if the cases are allowed to proceed separately. *See Arnold*, 681 F.2d at 193. The Related Actions are pled as class actions. They allege similar claims and seek certification of the same classes. Absent consolidation, it is possible multiple overlapping classes could be certified which may lead to Defendant's being responsible for more than one judgment for the same class. The potential risk of prejudice and possible confusion is far outweighed by the risk of inconsistent adjudications. *Id.*

Moreover, all of the cases before this Court have the same procedural posture where the Complaints have been filed, but Defendant has not yet filed a response. "Thus, this is not a case where consolidation will result in the delay of an otherwise trial-ready action." *McDonald*, 2021 WL 931599, at *4. Plaintiffs and Defendant will experience very little prejudice, if any, by consolidating these cases. Therefore, this factor militates in favor of consolidation. *See id.* at *3 (Consolidation is appropriate where the plaintiff sought to represent an overlapping class consisting of persons impacted by the data breach; thus, if not consolidated, each of the cases would likely present largely duplicative requests for class certification raising common legal issues on whether certification is appropriate and the proper definition of any such class.).

### 3. The Burden Posed by Multiple Lawsuits is Substantial

The burden on the Parties, the witnesses, and judicial resources will be substantially lessened by consolidation. Here, no plaintiff opposes consolidation, which augurs in favor of consolidation. *See Kavra v. Health Ins. Innovations, Inc.*, No. 8:17-CV-2186-T-17MAP, 2017 WL 10295953, at *1 (M.D. Fla. Dec. 28, 2017) ("Here the absence of any objection to motion to consolidate augurs in favor of consolidation."); *Bedont*, 2022 WL 3702117, at *2. Consolidation will allow Plaintiffs to jointly prosecute the case, share discovery documents, and avoid the possibility of the Court certifying overlapping classes. The burden of maintaining separate lawsuits will be lessened by consolidation. *Arnold*, 681 F.2d at 193. Defendant also does not oppose consolidation.

Lastly, judicial resources will be conserved by presiding over one consolidated case rather than multiple separate cases. It is likely that other similar cases will follow this one, given the size of the class. As such, consolidating these cases will reduce the number of motions, briefings, hearings, and trials before the Court.

### 4. Litigating Separate Actions Would Require More Time than Litigating a Consolidated Action.

Consolidation of cases is permitted as a matter of convenience and economy, even though consolidation does not merge separate suits into one cause of action. *Empire Aluminum Corp. v. SS Korendijk*, 391 F. Supp. 402, 410 (S.D. Ga., Savannah 1973). Consolidation of similar class actions expedites pretrial proceedings, reduces case duplication, avoids the need to contact parties and witnesses for multiple proceedings, and minimizes the expenditure of time and money for all parties involved. *Baker v. City of Atlanta*, No. 1:21-cv-4186-MLB, 2022 WL 18777369, at *2 (N.D. Ga, Mar. 8, 2022); *see also Leprino Foods Co. v. DCI, Inc.,* No. 13-cv-02430-RM-KMT, 2015 U.S. Dist. LEXIS 2482, at *7-9 (D. Colo. Jan. 9, 2015) (the court found that the two actions involve common questions of law or fact and thus "consolidation of these two actions will avoid unnecessary costs and will promote judicial efficiency").

It is plainly understood that litigating multiple separate causes of actions versus one consolidated action would take substantially more time for the Court and the Parties. Thus, the length of time required to conclude a consolidated lawsuit instead of multiple suits is likely to be significantly lessened and, therefore, weighs in favor of consolidation. *Arnold*, 681 F.2d at 193.

### 5. The Expense of Multiple Trials Supports Consolidation.

Finally, the relative expense to all parties concerned—particularly with regard to discovery—is highly likely to be lessened by litigating in one consolidated case rather than litigating in separate cases. *Id.*

### 6. Conclusion

Thus, Plaintiffs respectfully request that the Court consolidate the Related Actions under the docket number of the first filed case, No. 1:25-cv-00531, and under the new caption *In re Ahold Delhaize Data Breach Litigation.*

**B.    The Court Should Appoint Interim Class Counsel and Local Counsel Pursuant to Rule 23(g)**

Pursuant to Rule 23(g), a court may "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." *Bedont*, 2022 WL 3702117, at *2. Designation of interim counsel prior to class certification is appropriate because certain conduct and filings, such as discovery, discussion of settlement, or motion practice, are typically required prepare for the certification decision. Fed. R. Civ. P. 23 Advisory Committee Notes (2003).

Early class counsel appointments are particularly important where, as here, other cases have been and will continue to be filed by other counsel, including in other courts. *See, e.g. Othart Dairy Farms, LLC v. Dairy Farmers of Am., Inc.*, No. 22-cv-0251 MIS/SMV, 2022 U.S. Dist. LEXIS 133270, at *9 (D.N.M. July 27, 2022) ("Such appointment is warranted where there are multiple overlapping cases, 'rivalry [amongst counsel,] or uncertainty that makes formal designation of interim counsel appropriate.'"); *Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853, 867 (E.D. Mich. 2019)); *Beture v. Samsung Elecs. Am., Inc.,* No. 17-5757 (SRC), 2018 U.S. Dist. LEXIS 50413, at *3 (D.N.J. Mar. 27, 2018) ("This Court is persuaded that it is in the interest of the putative class of Plaintiffs to prevent a competition between counsel, and to encourage the coordination and cooperation of counsel by granting this motion."). "In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Id.* (citing *Manual for Complex Litigation* (4th) § 21.11).

Thus, appointing lead counsel now will "clarif[y] responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions,

conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual § 21.11; *see, e.g.*, *Tolmasoff v. General Motors, LLC*, Case No. 16-11747, 2016 U.S. Dist. LEXIS 85101, at *27 (E.D. Mich. June 30, 2016) (appointing interim class counsel where competing cases "may follow"). This clarity is particularly important in a case, such as this one, where thousands of class members likely have been impacted by the alleged conduct and where numerous cases have been and will continue to be filed.

Courts typically look to the Rule 23(g) factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A). *Bedont*, 2022 WL 3702117, at *2. These factors are:

(1) the work counsel has done in identifying or investigating potential claims in the action;

(2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(3) counsel's knowledge of the applicable law; and

(4) the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

As discussed below, each of the relevant factors demonstrate that Proposed Interim Class Counsel are highly qualified to represent the interests of the class.

### 1. Proposed Interim Lead Class Counsel and Local Counsel performed Substantial Work in Investigating this Action

Proposed interim lead class counsel and local counsel have committed substantial, yet appropriate, time and resources to organizing and working toward the advancement of this litigation, investigating and researching the potential legal theories and claims at issue, and researching and reviewing information relating to the factual underpinnings of the Data Breach. Counsel is familiar with the facts and legal issues in this matter and will continue his pursuit of the

claims on behalf of Plaintiffs and the class. Plaintiffs' counsel were the first to comprehensively investigate the facts of this matter and commence the prosecution of the cases. Plaintiff's counsel devoted substantial time investigating the background facts, drafting a detailed complaint, and coordinating with other plaintiffs' counsel.

Proposed Interim Class Counsel and Local Counsel continue to perform substantial work that has been (and will be) valuable to the class as the case moves forward. This includes but is not limited to: (a) reviewing communications concerning the Data Breach; (b) engaging in ongoing communications with absent class members; (c) investigating the scope of the Data Breach's alleged consequences and Defendant's public response regarding the same; (d) researching potential claims arising from the Data Breach and defenses thereto; (e) performing sufficient legal research into the causes of actions that can be asserted on behalf of the class; and (f) using this information to prepare a consolidated complaint.

Proposed Interim Class Counsel and Local Counsel have conducted all the work necessary to prosecute this litigation thus far, and he stands ready, willing, and able to continue to devote the substantial effort and resources (including the advancement of costs) necessary for advancing the claims of Plaintiffs and the proposed class.

    2.    **Proposed Interim Lead Class Counsel and Local Counsel Have Substantial Knowledge About and Is Experienced in Leading and Resolving Data Privacy Class Actions.**

Data privacy cases present unique and novel issues of fact and law that are always evolving. They further require an understanding of the technical issues of data hacking, data privacy measures, and industry standards. Appointing class counsel experienced in data privacy litigation is in the best interest of the class. *Outten v. Wilmington Tr. Corp.,* 281 F.R.D. 193, 200 (D. Del. 2012) ("Experience and knowledge of the law is of the utmost importance when determining lead counsel.").

**Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC**

Mariya Weekes a Partner at the international plaintiffs' class action firm Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"). Since Milberg's founding in 1965, it has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements.[2]Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the United States Supreme Court.[3] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing. Milberg has more than 100 attorneys on staff and has offices across the United States and the European Union.

Ms. Weekes is a former Florida State Circuit Court Judge, elected to the bench by her constituents. As a Florida Circuit Court Judge, she presided over thousands of complex cases, hundreds of trials, and motions. In her capacity as a Circuit Court Judge, she served on the Circuit's appellate panels reviewing appeals from the lower trial Courts and administrative agencies. Before ascending to the bench, she practiced as a trial lawyer representing individuals and corporations in complex cases throughout the State of Florida. As a practicing attorney, she has personally tried dozens of jury trials to verdict and has participated in many significant cases. Both as a civil trial lawyer and former prosecutor, she has handled complex cases from their inception through appeal. Since leaving the bench, she now represents individuals and other entities in class action litigation in both state and federal courts.

---

[2] *See, e.g., In re Tyco International Ltd., Securities Litigation*, MDL 1335 (D.N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.

[3] *See* https://milberg.com/precedent-setting-decisions/page/3/.

Case 1:25-cv-00531-TDS-LPA    Document 6    Filed 06/30/25    Page 12 of 22

After stepping down from the bench, Ms. Weekes joined Milberg's Cybersecurity and Data Privacy Group, which has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country. *See, e.g.,* *In Re: LoanCare Data Security Breach Litig.*, No. 3:23-cv-1508-MMH-MCR (M.D. Fla.) (where Ms. Weekes was appointed co-lead counsel in a consolidated action involving more than 1.3 million consumers); *In Re: Berry, Dunn, McNeil & Parker Data Security Incident Litigation.*, No. 2:24-cv-00146 (D. Maine) (Ms. Weekes was appointed to the executive committee in a consolidated action involving 1.1 million consumers); *Reichbart v. Financial Business and Consumer Solutions, Inc.*, No. 24-cv-1876 (E.D. Penn.) (Ms. Weekes was appointed chair of the Plaintiffs' Executive Committee in a consolidated action involving more than 1.9 million consumers); *Morrison et al. v. Family Dollar Stores, LLC, et al.*, 0:24-cv-60294-AHS (S.D.Fl.) (Ms. Weekes was appointed as co-lead counsel in a consolidated consumer protection class action involving adulterated mediations impacting thousands of consumers across 19 States); *W. v. LivaNova USA, Inc.,* Case No. 4:24-cv-02250 (S.D. Tex.) (Ms. Weekes was appointed Interim Co-Lead Counsel); *In re Coastal Orthopedics & Sports Medicine of Southwest Florida Data Breach Litig.,* Case No. 2024-CA-1078AX (12th Judic. Circ. Ct. of Fla., Manatee Cnty.) (Ms. Weekes was appointed Interim Class Counsel); *Lomedico v. MarineMax, Inc.*, Case No. 8:24-cv-1784-MSS-AEP (M.D. Fla.) (appointed joint Interim Class Counsel); *In re TRC Staffing Services, Inc. Data Breach Litig.*, Case No. 1:24-cv-02398-VMC (N.D. Ga.) (Ms. Weckes was appointed co-lead counsel); *Lepore et al v. Affiliated Dermatologists & Dermatologic Surgeons, P.A.*, Case No. MRS-L-001091-24 (Ms. Weekes was appointed Interim Class Counsel); *Owens et al v. MGM Resorts International, et al.,* Case No. 2:23-cv-01480-RFB-MDC (D. Nev.) (Ms. Weekes was appointed to Plaintiffs' Steering Committee); *Mckinley v, Doxim, Inc.* Case No. 2:24-cv-11550-

TGB-CI (E.D. Mich.) (Ms. Weekes was appointed co-lead counsel); *Cucuta v. FloridaCentral Credit Union,* Case No. 24-CA-006065 (Hillsborough County, Fl.) (Ms. Weekes was appointed co-lead counsel).; *In re: MoveIt Customer Data Security Breach Litigation,* 1:23-md-03083 (D. Mass.) (where Milberg was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers).[4]Milberg's Cybersecurity and Data Privacy Group is largely responsible for developing the favorable case law that many plaintiffs rely on in the data breach space. *See e.g., Webb v. Injured Workers Pharmacy, LLC,* 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal with prejudice of a data breach case and finding Article III standing); *In re Arthur J. Gallagher Data Breach Litig.,* 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers); *In re Blackbaud, Inc., Customer Data Breach Litig.,* No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case).

A copy of Ms. Weekes resume, which includes additional information about Ms. Weekes and her firm is attached hereto as **Exhibit A**.

**Jeff Ostrow of Kopelowitz Ostrow P.A.**

Jeff Ostrow is the Managing Partner of Kopelowitz Ostrow P.A. and has been practicing law for 28 years. Mr. Ostrow established the South Florida-based firm immediately following his graduation from Nova Southeastern University in 1997 and has since grown it to 25 attorneys.

---

[4] *See, also Morrill v. Lakeview Loan Servicing, LLC,* Case No. 1:22-cv-20955-DPG (S.D. Fla.) (where Milberg is appointed to the leadership committee in a data breach class action involving 6 million consumers); *Sherwood v. Horizon Actuarial Services, LLC,* Case No. 1:22-cv-01495-ELR (N.D. Ga.) (where Milberg is court-appointed co-lead counsel in a data breach class action involving 4 million consumers).

Beyond managing the firm, Mr. Ostrow heads the class action department and maintains a full caseload of nationwide class actions. Although Mr. Ostrow currently only represents class plaintiffs, he has prior experience defending large companies in class actions, including banks, commercial lenders, and tech companies, which affords him a valuable perspective and advantage in litigation and settlement.

Mr. Ostrow oversees one of the largest data breach groups in the country. He is currently Lead Counsel in MDL-3090, *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-md-3090 (S.D. Fla.), which involves 10 defendants and 6 million people. Additional examples of other cases in which he serves as Lead Counsel include: *Crowe v. Managed Care of N. Am., Inc.*, No. 23-cv-61065 (S.D. Fla.), affecting eight million individuals; *In re Zeroed-In Techs., LLC Data Breach Litig.*, No. 1:23-cv-03284-BAH (D. Md.), affecting two million individuals, *Harrell v. WebTPA Employer Servs. LLC*, No. 3:24-cv-01160 (N.D. Tex.), affecting two and half million individuals; *Stallone v. Fin. Bus. & Consumer Sols., Inc.*, No. 2:24-cv-01876 (E.D. Pa.), affecting almost two million individuals; *Gambino v. Berry, Dunn, Mcneil & Parker LLC*, No. 2:24-cv-146 (D. Me.), affecting 1.1 million individuals; *Mclean v. Signature Performance, Inc.*, No. 8:24-cv230 (D. Neb.), affecting at least 106,540 patients; *Wilson v. Frontier Comm'ns Parent, Inc.*, No. 3:23-CV-01418-L (N.D. Tex.), affecting at least 750,000 individuals; *Flores v. S. Tex. Oncology & Hematology, PLLC*, No. 2024CI13299 (Tex. Dist. Ct., Bexar Cty.), affecting 176,303 patients; *In re HealthEquity, Inc. Data Sec. Incident Litig.*, No. 2:24-cv-528 (D. Utah), affecting 4.3 million patients; *Griffiths v. Kootenai Health, Inc.*, No. 2:24-cv-205 (D. Idaho), affecting 827,149 patients; *Butler v. Acadian Ambulance Serv., Inc.*, No. 6:24-cv-01011 (W.D. La.), affecting 3 million patients; and *In re DISA Global Data Breach Litigation*, No. 4:25-cv-00821 (S.D. Tex.), affecting 3.3 million people.

For about 13 years, Mr. Ostrow's firm served as Coordinating Counsel, Settlement Class Counsel, and Lead Class Counsel in *In re Checking Acct. Overdraft Litigation*, No. 1:09-MD-02036-JLK (S.D. Fla.), a large MDL that resulted in the recovery of $1.2 billion from the nation's largest banks, and is Liaison Counsel in *In re Disposable Contact Lens Antitrust Litigation*, No. 3:15-md-2626-HES-JRK (M.D. Fla.), an antitrust class action with $85 million recovered to date. Moreover, Mr. Ostrow's firm is co-counsel for Broward County and the City of Fort Lauderdale in *In re: National Prescription Opiate Litigation*, No. 1:17-md-2804 (N.D. Ohio), and for the Broward and Miami Dade County School Boards in *In re Juul Labs*, No. 19-md-2913 (N.D. Cal.), helping clients recover $100 million and $26 million, respectively.

Federal judges have recognized Mr. Ostrow's commitment to excellence. In *Farrell v. Bank of America, N.A.*, 327 F.R.D. 422, 432 (S.D. Cal. 2018), in which Mr. Ostrow served as lead counsel on behalf of millions of people, United States District Judge James Lorenz made the following observation when granting final approval of a settlement that included a $68 million recovery and $1.2 billion in injunctive relief requiring the defendant bank to stop an enormously lucrative practice:

Class Counsel achieved this result through tenacity and great skill. In all of their written submissions and in their presentation at the Final Approval Hearing, Class Counsel's arguments were laudably clear and precise, no small feat given the complexity of the legal questions at issue here. It is clear that substantial preparation went into all of Class Counsel's work on this case.

Similarly, when approving a $13 million settlement in which Mr. Ostrow was one of the lead counsel, United States District Judge James Lawrence King commented that "Class Counsel's efforts in pursing and settling these consumer claims were, quite simply, outstanding." *In re Checking Account Overdraft Litig.*, 1:09-md-02036-JLK, 2013 WL 11319244, *16 (S.D. Fla. Aug.

2, 2013). In another recent case in which Mr. Ostrow was lead counsel, United States District Judge Jose Martinez noted, "Here, Class Counsel worked extensively and with a high level of skill to advance Plaintiff's claims . . . The case involved difficult factual and legal issues from a global pandemic. . . . Despite the strong defenses presented by Barry [University], Class Counsel obtained an excellent result for the Settlement Class Members." *Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM (S.D. Fla.), ECF No. 84 at 14.

Mr. Ostrow has worked productively with Proposed Interim Co-Lead Class Counsel in many other cases. He is confident that this proposed leadership structure will result in an excellent 55 recovery for all clients and Class Members.

A copy of Mr. Ostrow's resume, which includes additional information about Mr. Ostrow and his firm is attached hereto as **Exhibit B**.

### David Wilkerson of Wilkerson Justus, PLLC

David Wilkerson is a graduate of the University of South Carolina Law School and member of good standing of the North Carolina State Bar and the South Carolina State Bar. David co-founded the firm of Wilkerson Justus in April 2025 after over 18 years as a Senior Principal at another North Carolina firm.

He currently serves as class counsel in numerous class actions around the nation and practices in the area of complex business litigation. He served for six years on the section council for the Antitrust and Complex Litigation Section of the North Carolina Bar Association and has served on the North Carolina Business Court Rules Committee. He currently serves on the section council for the Litigation Section of the North Carolina Bar Association. His recent leadership in class actions includes, but is not limited to, serving as co-lead counsel in *Gaston v. Lexis Nexis Solutions, et al.*, No. 5:16-cv-9 (W.D.N.C.); class counsel in *In Re Blue Cross Antitrust*, No. 2:13-

cv-20000 (N.D.A.L.); interim liaison counsel *in In Re Sanderson and Koch Broiler Chicken Grower Litigation*, No. 7:10-cv-00031 (E.D.N.C); co-lead counsel in *Morris v. Bank of America, N.A.*, No. 3:18-CV-157 (W.D.N.C.); co-lead counsel in *Peters v. Aetna*, No. 1:15-cv-00109-MR (WDNC); co-lead counsel in *Millwood v. State Farm Life Insurance Company*, No. 7:19-cv-01445 (D.S.C.). Since 2021, he has argued cases in the Ninth Circuit Court of Appeals, the Federal Circuit Court of Appeals, the United States Patent and Trademark Appeal Board, and served as counsel in class actions in South Carolina, Oklahoma, Virginia, and Missouri, among others. He recently presented on a panel at the North Carolina Bar Association Litigation Section annual CLE on privacy breach class actions.

A copy of Mr. Wilkerson's resume, which includes additional information about Mr. Wilkerson and his firm is attached hereto as **Exhibit C**.

**Jean S. Martin of Morgan & Morgan, P.A.**

Jean S. Martin is one of the lead attorneys in the Class Action Department of Morgan & Morgan, devoting her practice to data privacy, consumer protection, and defective products class actions. Ms. Martin received her Juris Doctor degree from Wake Forest University School of Law, where she served as Editor-in-Chief of the *Wake Forest Law Review*. Ms. Martin graduated from Wake Forest University with a Bachelor of Science in Mathematical Economics and earned a Master of International Business from the University of South Carolina. She also has served as an adjunct professor at her alma mater, Wake Forest University School of Law. She obtained eDiscovery certification from the eDiscovery Training Academy at Georgetown Law Center in 2017.

Ms. Martin has been honored with the prestigious "AV" rating by Martindale-Hubbell. In 2016, Ms. Martin was selected by her peers as the foremost Litigation attorney in the State of

North Carolina for *Business North Carolina Magazine's Legal Elite,* gaining membership in the *Legal Elite* Hall of Fame. For upholding the highest principles of the legal profession and for outstanding dedication to the welfare of others, Ms. Martin has also been selected as a Fellow of the American Bar Foundation, an honorary legal organization whose membership is limited to one third of one percent of lawyers in each state. In 2022, she was recognized by Law360 as an MVP in the area of cybersecurity and data privacy. She was recently named as one of National Law Journal's Class Action/ Mass Tort Litigation Trailblazers of 2023.

Ms. Martin concentrates her practice on complex litigation, including consumer protection and data privacy class actions. She presently serves by appointment as interim co-lead counsel in, *Combs, et al. v. Warner Music Group,* Case No. 1:20-cv-07473-PGG (S.D.N.Y.) and *Johnson, et al. v. Yuma Regional Medical Center,* 2:22-cv-01061-SMB (D. Ariz.). She also serves as a member of the Plaintiffs' Steering Committee for the cases proceeding against LabCorp, Inc. in *In re: American Medical Collection Agency Data Breach Litigation,* 19-md-2904 (D. N.J.) and a steering committee member *In re: Allergan Biocell Textured Breast Implant Products Liability Litigation,* No. 19-md-2921 (D. N.J).

In a case in which she serves as interim co-lead counsel, Ms. Martin argued a motion for class certification which resulted in the first order in the country granting Rule 23(b)(3) certification in a consumer payment card data breach. *In re Brinker Data Incident Litig.,* No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021).

She has served in leadership positions in many consumer class actions and consolidated proceedings in federal courts around the country, including *inter alia: In re Morgan Stanley Data Security Litigation,* 1:20-cv-05914 (S.D.N.Y.)($68 million settlement for 15 million class members); *Aguallo, et al. v. Kemper Corp., et al.,* Case No.: 1:21-cv-01883 (N.D.

Ill.) (data breach settlement valued at over $17.5 million) (co-lead counsel); *Gordon, et al. v. Chipotle Mexican Grill, Inc.,* No. 17-cv-01415 (D. Colo.) (data breach) (co-lead counsel); *Linnins v. HAECO Americas, Inc., et al.,* No. 16-cv-486 (M.D.N.C.) (employee data disclosure) (co-lead counsel); *Torres v. Wendy's International, LLC,* No. 6:16- cv-210 (M.D. Fla.) (data breach) (class counsel); *Fuentes, et al. v. UniRush, LLC, et al.,* No. 1:15- cv-08372 (S.D.N.Y.) (disruption in servicing of financial accounts) (co-lead counsel); *Lewis, et al., v. Green Dot Corp., et al.,* No. 2:16-cv-03557 (C.D. Cal.) (disruption in servicing of financial accounts) (class counsel); *Brady, et al. v. Due North Holdings, LLC, et al.,* No. 1:17-cv-01313 (S.D. Ind.) (employee data disclosure) (class counsel).

Ms. Martin has been a presenter on a variety of topics related to class actions including: *Fantasy Gaming Webinar: FanDuel and DraftKings Litigation,* AAJ (December 2015); *Thinking Outside the Black Box: Drug Cases in the Class Context,* Mass Torts Made Perfect (October 2019); *Mass Torts andMDLs,* Western Alliance Class Action Forum (March 2020); *Consumer Class Actions,* Western Alliance Class Action Forum (March 2022); *How to Maximize Efficiency in Document Production and Review,* Mass Torts Made Perfect (April 2022); Class Action Takeover: The Rise of Class Actions within MDLs, HarrisMartin (July 2023).

A copy of Ms. Martin's resume, which includes additional information about Ms. Martin and her firm is attached hereto as **Exhibit D**.

### C.    Proposed Briefing Schedule

Plaintiffs submit the following proposed schedule:

1.    Plaintiffs' Consolidated Class Action Complaint shall be filed within **30 days** after consolidation and appointment of interim co-lead class counsel;

2.    Defendant shall file a Motion to Dismiss or Answer to the Consolidated Class

Action Complaint within **60 days** of filing of the Consolidated Class Action Complaint, Plaintiffs have **30 days** to file a response to the motion to dismiss, and Defendant has **21 days** to file its reply in support of any motion to dismiss the Consolidated Class Action Complaint.

## III.  CONCLUSION

Plaintiffs respectfully request that the Court grant their motion and enter an order: (1) consolidating the Related Actions; (2) appointing Mariya Weekes of Milberg Coleman Bryson Phillips Grossman, PLLC, Jeff Ostrow of Kopelowitz Ostrow, P.A., and David Wilkerson of Wilkerson Justus, PLLC as interim liaison counsel, and Jean S. Martin of Morgan & Morgan, P.A. as interim local counsel, and (3) setting the proposed briefing schedule discussed *supra*. A proposed order granting this relief is submitted herewith.

Dated: June 30, 2025

/s/ David M. Wilkerson
David M. Wilkerson
**WILKERSON JUSTUS PLLC**
P.O. Box 54 Asheville, NC 28804
(828) 316-6902
dwilkerson@wilkersonjustus.com

Mariya Weekes*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2nd Floor
Coral Gables, FL  33134
Tel:  (786) 879-8200 / Fax: (786) 879-7520
mweekes@milberg.com

Jeff Ostrow*
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33301
Tel: (954) 525-3200
Email : ostrow@kolawyers.com

Jean S. Martin*
**MORGAN & MORGAN, P.A.**
201 North Franklin Street, Seventh Floor

Tampa, FL 33602
(813) 559-4908
jeanmartin@forthepeople.com

*Attorneys for Plaintiffs and the Proposed
Class*

\*pro hac vice forthcoming

## CERTIFICATE OF SERVICE

I certify that on June 29, 2025, a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the Court via CM/ECF, which will send notice of electronic filing to all counsel of record.

/s/  David M. Wilkerson
David M. Wilkerson